## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:** ) | |
| ) | |
| ) | **Chapter 7** |
| **JEFFERY R. COLES, and** ) | |
| **DANA R. COLES,** ) | |
| ) | |
| **Debtors.** ) | |
| ) | **Case No. 20-14187-ELF** |

### MOTION FOR ENTRY OF ORDER AUTHORIZING GARY F. SEITZ, CHAPTER 7 TRUSTEE TO SELL REAL ESTATE LOCATED AT 6407 SHELBOURNE AVENUE PHILADELPHIA, PA FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS

Gary F. Seitz, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Joseph Ruggiero ("Debtor") moves this Court for the entry of an Order Authorizing The Trustee to Sell Real Estate Located at 6407 Shelbourne Avenue, Philadelphia, PA 19152 (the "Real Property") Free and Clear of Liens, Claims and Interests (unless otherwise stated) Pursuant to Section 363(b) and (f) of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") and in support thereof submits as follows:

### JURISDICTION AND AUTHORITY

1.       This Court has jurisdiction over this Motion pursuant to Sections 157 and 1334 of Title 28 of the United States Code.

2.       This Motion is filed in accordance with Bankruptcy Rules 3007 and 6004.

3.       Venue of this case and this Motion in this district is proper pursuant to Sections 1408 and 1409 of Title 28 of the United States Code.

4.       This matter is a core proceeding pursuant to Section 157(b)(2) of Title 28 of the United States Code.

5.       The statutory predicates for the relief requested herein are Sections 363(b) and (f) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6004.

## BACKGROUND

6.       On October 21, 2020, the Debtors filed with this Court a voluntary petition under chapter 7 of the Bankruptcy Code.

7.       Gary F. Seitz (the "Trustee") was thereafter appointed interim chapter 7 trustee of the Debtor's bankruptcy estate.  After the conclusion of the meeting of creditors, he became the permanent trustee and continues to serve in that capacity.

8.       As of the Petition Date, the Debtor owned the Real Property, which became property of the estate pursuant to 11 U.S.C. §541.

9.       In the Debtor's schedules and statements of financial affairs, the Debtor valued the Real Property at $162,812 with a mortgage lien totaling $119,884.98.

10.       On December 16, 2020, the Trustee filed an Application to Employ Star Real Estate Group, Inc. ("Star") as Property Manager and Real Estate Agent to sell the Real Property. The application was approved by this Court on January 11, 2021.

11.       Pursuant to an order dated February 5, 2021, the Trustee has been operating the Real Property as part of the Debtors' rental business.

12.       The Trustee has now entered into an Agreement of Sale (the "Agreement of Sale") with Frida Lukov / 6407ShelbourneSt LLC (the "Buyer") to purchase the Real Property, as is, where is, for $175,000.00 (the "Purchase Price"), subject to this Court's approval. The Buyer has remitted a good faith deposit of $9,000.00. A true and correct copy of the Agreement of Sale is attached hereto as **Exhibit A**.

13.       Pursuant to the terms of the Trustee's retention of Star, Star is entitled to a commission of six percent (6%) of the purchase price of the Real Property (the "Broker Fee") from the sales proceeds.

14.     The Real Property is being sold subject to leases.  Buyer is aware that the Trustee has no deposits to turn over at closing.

15.     The Trustee has marketed the Real Property with the assistance of his professionals and believes that this is the highest and best offer for the Real Property.  Given the marketing effort and current economic conditions, the Trustee, in the exercise of his business judgment, feels the sale on these terms approximates the fair market value of the Real Property.

16.     The Buyer understands that the Sale is subject to the Trustee's right to receive and accept higher and better offers for the purchase of the Real Property.

17.     The Trustee's broker located the Buyer who has offered to purchase the Real Property from Debtor's estate for what the Trustee and his broker feel is its approximate fair market value.

18.     The Trustee seeks court approval of the Sale free and clear of liens, claims, interests, and encumbrances (the "Liens"), authorizing payment of certain undisputed Liens, if any, and payment of closing costs with the Sale of the Real Property, with all Liens not satisfied at closing, if any, attaching to the proceeds of the Sale, pursuant to 11 U.S.C. §363(f)(1)-(4).

19.     The land records indicate certain liens, claims or interests in the Real Property.

20.     The following liens, claims or interests in the Real Property are undisputed by the Trustee (the "Undisputed Liens") and will therefore be paid at closing, or an agreement is in place with respect to treatment of such Undisputed Liens, as follows:

        a.   JPMorgan Chase Bank, N.A. - approximately $119,884.98

21.     The following judgment liens in the Real Property are under investigation by the Trustee (the "Investigated Liens") and will therefore either be paid at closing if confirmed or the liens, if any, will attach to the proceeds of the sale until the status is determined, as follows:

a. Judgments disclosed in title report:

    i.  Commonwealth of Pennsylvania vs Jeffery Coles, Case 100945319, 10/5/2010, $384.50 (Debtor advises this was already paid)

    ii.  Philadelphia Clerk of Quarter Sessions vs Jeffrey Coles, Case 100457744, 05/29/2010, $417.08 (Debtor advises this was already paid)

    iii.  Commonwealth of Pennsylvania vs Jeffrey A. Coles, case 130857398, 09/07/2013, $643.44 (wrong middle initial)

    iv.  Commonwealth of Pennsylvania vs Jeffrey A. Coles, case 130950945, 09/15/2013, $644.44 (wrong middle initial)

    v.  Commonwealth of Pennsylvania vs Jeffrey A. Coles, case 130952101, 09/15/2013, $644.44 (wrong middle initial)

    vi.  Commonwealth of Pennsylvania vs Jeffrey A. Coles, case 1609442519, 10/06/2016, $807.94 (Debtor advises this was already paid)

    vii.  Commonwealth of Pennsylvania vs Jeffrey R. Coles, case 111245794, 01/02/2012, $1,575.44 (Debtor advises this was already paid)

    viii.  Philadelphia Adult Probation vs Jeffrey A. Coles case 941141539, 11/7/1994, $184.00 (wrong middle initial)

    ix.  Philadelphia Clerk of Court vs Jeffrey A. Coles, case 100457084, 5/29/10, $235.81 (wrong middle initial)

x. Philadelphia Adult Probation vs Jeffrey Coles, case 910843950, 09/22/1992, $900.10. (not this debtor)

22.    Upon information and belief, there exists no other alleged liens, claims or interests in the Real Property. Any other such liens, if any, are disputed pursuant to Section 363(f)(4) of the Bankruptcy Code.

## SURCHARGES

23.    To the extent any party holds a valid security interest in or claim to the Real Property, the Trustee may seek authority pursuant to §506(c) to pay out of any recovery from any sale, the reasonable, necessary costs and expenses of preserving, or disposing of the Real Property.

24.    Under § 506(c), a trustee may recover from property securing an allowed secured claim the "reasonable, necessary costs and expenses of preserving or disposing of, such property to the extent of any benefit to the holder of such claim …." 11 U.S.C. § 506(c); *In re Visual Ind.*, Inc., 57 F.3d 321, 325 (3d Cir. 1995); *In re C.S. Assocs.*, 29 F.3d 903, 906 (3d Cir. 1994).  The premise underlying § 506(c) is that the unsecured creditors should not be required to bear the full costs of administering a secured creditor's collateral.

25.    Section 506(c) of the Bankruptcy Code provides an exception to the general rule that the payment of expenses associated with administering a bankruptcy estate, including the administration of assets pledged as collateral, must derive from unencumbered assets. Under section 506(c), a trustee "may recover from property securing an allowed claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." The purpose of the provision is to prevent secured creditors from obtaining a financial windfall at the expense of the estate and unsecured creditors by

ensuring that the secured creditors are responsible for the same collateral disposition costs within a bankruptcy case that normally would arise in a foreclosure or similar state law proceeding outside bankruptcy. *See Loudoun Leasing Development Co. v. Ford Motor Credit Co.* (*In re K & L Lakeland, Inc.*), 128 F.3d 203 (4th Cir. 1997); *In re TIC Memphis RI 13, LLC*, 498 B.R. 831 (Bankr. W.D. Tenn. 2013).

26.    The Trustee has determined that the total surcharge amounts to a value equivalent to 15 percent of the sale price.

27.    The Trustee has determined that if any such surcharge is necessary, the Trustee seeks to surcharge such party up to fifteen percent (15%) of the sale price.

## ANALYSIS OF THE PROPOSED TRANSACTION

28.    The Trustee has investigated the value of the Real Property. Given the value of the Real Property, the Trustee believes that a private sale or an auction, if one occurs, offers the method by which the Trustee may obtain the highest and best value to the estate.

29.    The Trustee in his exercise of his sound business judgment believes that the proposed sale of the Real Property is fair and equitable under the facts and circumstances of this case and is in the best interests of the Debtor's creditors.

30.    The Real Estate has been marketed extensively by the real estate agent.  After many showings, several offers have been made.

31.    The current offer is the highest and best offer provided to date.

32.    The Trustee believes that the net sales proceeds from the proposed transaction, along with the sale of the Debtor's other rental property, will result in a meaningful distribution to creditors.

33.    The preliminary sale analysis is as follows:



34.     The debtors have identified in their schedules unsecured claims totaling around $399,000.  The claims bar date in this case is 3/22/2021 with the government bar date of 4/19/2021.  For purposes of this analysis, the Trustee assumes that all creditors will file claims and all such claims will be valid.

35.     Assuming the facts upon which the Trustee relies ring true, after the trustee commission is deducted, the unsecured creditors could realize a return of approximately sixteen percent from the proceeds of these two sales.

## RELIEF REQUESTED

36.     Section 363(b) of the Bankruptcy Code authorizes the Trustee, after notice and hearing, to sell property of the estate other than in the ordinary course of business. Section 363(f) of the Bankruptcy Code authorizes the Trustee to sell property free and clear of interest, if any.

37.    Courts within this circuit interpreting Section 363(b)(1) have held that transactions should be approved under Section 363(b)(1) when they are supported by the sound business judgment of management. *See In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del. 1991) (outlining requirements for sale of assets pursuant to Section 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and that the transaction is in good faith); *see also In re Titusville Country Club,* 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Industrial Valley Refrig. & Air Cond. Supp*., 77 B. R. 15, 20 (Bankr. E.D. Pa. 1987).

38.    The "sound business purpose test" requires a trustee to establish four elements to sell real estate outside the ordinary course of business:

     a.  that a "sound business purpose" justifies the sale of assets outside the ordinary course of business;

     b.  that adequate and reasonable notice has been provided to interested persons;

     c.  that the trustee has obtained a fair and reasonable price; and

     d.  good faith.

39.    The Sale is the product of good faith, arm's length negotiations between the Trustee and Buyer. The Trustee believes that the Sale satisfies the good faith element of the "sound business purposes" test.

40.    Further, the Trustee does not believe that any other alternative will at this time provide a higher value for Real Property. Under the circumstances, the Sale should be authorized.

41.    The Proposed Purchase Price subject to the terms and conditions of the Agreement of Sale represents a fair and reasonable purchase price for the Real Property.

42.      For the foregoing reasons, the Trustee respectfully requests this Court to approve the Sale pursuant to Sections 363(b) and (f) of the Bankruptcy Code, and enter an order, substantially in the form annexed hereto, approving the terms and conditions of the Sale as set out in the Agreement of Sale and pursuant to 11 U.S.C. §363(b) and (f) of the Bankruptcy Code.

## UPSET BID PROCEDURE/AUCTION

43.      Any party interested in purchasing the Real Property (an "Upset Bidder") should file a notice of an upset bid with the Bankruptcy Court and serve same on the United States Trustee and Chapter 7 Trustee **on or before 5:00 p.m. on March 4, 2021** (the "Bid Procedures").

44.      The Upset Bidder shall submit to the Trustee an offer, in writing, in an amount equal to the Alternative Minimum Bid (defined below), and submit information demonstrating the financial wherewithal of the Upset Bidder to consummate the proposed transaction.

45.      An Alternative Minimum Bid shall be an amount no less than One Hundred Eighty Thousand Dollars ($180,000.00).

46.      Upset Bidders may not substantially deviate from the terms of the Agreement of Sale attached hereto as Exhibit A. The Trustee, in the Trustee's discretion, will determine if the Upset Bidder has submitted a qualified bid based on the terms of the bid, and review of proof of the Upset Bidder's financial ability to consummate the proposed purchase at the Alternative Minimum Bid price.

47.      If a qualified Alternative Minimum Bid is timely received by the Trustee, then the Trustee shall conduct a private auction starting at **11:00 a.m. on March 9, 2021 by Zoom Conference Meeting (telephone or streaming audio-video).** Only those who have submitted a qualified Alternative Minimum Bid, as determined by the Trustee, and their professionals may

attend the auction. The Trustee will select the bid, or combination of bids, at the conclusion of the auction that the Trustee believes to be the highest or best value for the Real Property (the "Winning Bidder"). The Trustee reserves the right to select the best bid, even if not the highest bid.

48. The Winning Bidder and any bidder participating in the process must complete and sign all agreements or other documents with the Trustee evidencing and containing the terms and conditions on which the winning or any other bid was made before the auction is concluded.

49. In the event the Winning Bidder is different from the Buyer identified in this Motion to Sell, the Trustee shall ascertain whether the Winning Bidder is an insider of the Debtor, whether the sale represents an arms-length transaction between the parties, made without fraud or collusion, and whether there has been any attempt by either party to take any unfair advantage of the other such that the Winning Bidder may be deem to be purchasing the Real Property in good faith pursuant to 11 U.S.C. § 363(m).

50. If for any reason the Winning Bidder fails to consummate the sale of the Real Property, the offeror of the second highest or best bid (subject to the same reservations) will automatically be deemed to have submitted the highest and best bid, and the Trustee is authorized to effect the sale of the Real Property to such offeror without further order from the bankruptcy court. If such failure to consummate the purchase of the Real Property is the fault of the Winning Bidder, the Winning Bidder's deposit, if any, shall be forfeited to the Trustee.

51. The Trustee reserves the right to: (1) impose, at or before the Auction, additional terms and conditions on a sale of the Real Property; (2) extend the deadlines from those set forth herein, adjourn the auction at the auction; (3) withdraw the Real Property, or any part of the Real Property, from sale at any time before or during the auction, and to make subsequent attempts to

market the same; and (4) reject all bids if, in the Trustee's reasonable judgment, no bid is for a

fair and adequate price.

52.    For the reasons set forth herein, the Trustee respectfully requests that the Court

issue an Order pursuant to 11 U.S.C. §105 and 363(b) and (f) authorizing the Trustee to sell the

Sale Assets contemplated by the Agreement of Sale annexed hereto as Exhibit A, free and clear

of liens and claims.

53.    After the closing has taken place, a complete accounting of the sale will be

obtained from the Broker and/or title clerk and the Trustee's Report of Sale will be filed with the

court.

54.    Notice of this Motion will be made on all parties in requesting notice pursuant to

L.B.R. 5005, as amended.

**WHEREFORE**, Gary F. Seitz, Chapter 7 Trustee, respectfully requests that this Court

authorize the private sale and enter the Order submitted with this motion, in the form attached

hereto.

Date: February 11, 2021            Respectfully submitted,

GELLERT SCALI BUSENKELL & BROWN, LLC

/s/ Gary F. Seitz
Gary F. Seitz
8 Penn Center
1628 John F. Kennedy Blvd., Suite 1901
Philadelphia, PA 19103
Phone: (215) 238-0012
Fax: (215) 238-0016
Email: gseitz@gsbblaw.com
Chapter 7 Trustee